Van Brunt, P. J.
The defendant is a corporation of Georgia and a common carrier of passengers for hire, and owner of the steamship City of Savannah, which vessel in March, 1885, was running between the port of New York and Savannah.
The plaintiff was a passenger upon this steamer sailing from New York, March 10, 1885, and arriving at Savannah on or about March 13, 1885; and while the vessel was being warped into her wharf was injured by a hawser which broke loose, and struck and broke her left leg.
The injury was caused by the breaking of a toggle, which was put through the strap of the block through which the hawser ran, and which strap was put through a hawser hole, the object being to keep the hawser near the bulwarks of the ship and not allow it to strike against the deck houses.
The plaintiff was standing on the deck of the ship when this toggle broke, and the hawser swept the deck, breaking the plaintiff’s leg.
The defendants claim that there was no proof of negligence upon the part of the defendants, that there was proof that the plaintiff was guilty of contributory negligence, and that the damages were excessive.
The defendants having undertaken as a common carrier to convey the plaintiff from New. York to Savannah, were bound to take all the care to prevent injury to her which the nature of their business would allow, and use the greatest care and skill in the management of their vessel.
The fact that the accident happened from the breaking of the toggle, raised a presumption of negligence in the selection of this piece of wood for the purpose, especially in view of the evidence that such a piece of wood, if sound, would have been strong enough to stop the engine before breaking.
It was therefore incumbent upon the defendants to prove that due care had been used in the selection of this toggle and that the weakness which this toggle exhibited upon being subjected to the strain on this occasion, was owing to some concealed defect which inspection would not disclose.
What the particular weakness of this toggle was, cannot be shown as it fell into the water on breaking and no effort was made to pick it up, although a boat was at hand in the water.
That the defect was a concealed one was attempted to be proven by showing that due care was shown in its selection.
*666 The witness Hartnoll who selected the toggle swore that he went down between decks to fetch up the toggle. He says that he examined five or six pieces of wood used for dunnage, and that he selected this as the best and brought it up and used it. He says that it was not dark down there, nor was it broad-daylight; neither dark nor daylight, that it was not broad daylight even on deck, and that the ship’s sides have got dead lights which are like glass windows; it allowed a little light to break in between ship’s decks.
From this evidence the jury may very well have been of the opinion that the claim of having made any examination of this piece of wood before it was used was without foundation, as evidently there was not sufficient light to make any examination between decks at all.
It is true that this witness, upon being recalled, testified that he looked at it on deck before he rigged it, and did not see anything about the stick that led him to change his opinion of it down below; but in view of the extraordinary evidence of this witness as to the light between decks, the jury may not have considered his testimony as the most reliable.
The witness Porter, quartermaster, whom it is claimed examined this toggle before it was used, only saw it being carried along, and says he saw it was a good piece of wood. He made no examination whatever, and could form no judgment as to its fitness for use.
The witness Johnson made no examination of the toggle at all. His testimony was to the effect that a stick of wood, such as was exhibited in court upon the trial, would make a suitable and safe toggle, and the evidence shows that if the piece of wood selected was similar to the one presented in court, claimed to have been taken from the same heap of wood used as dunnage, it was entirely suitable for the purpose, and would have stopped the engine before breaking. _
_ This evidence however established that this piece of wood must have been very weak or it would not have broken, and we have no knowledge as to what had caused this weakness, whether it was a concealed defect which examination would not have disclosed, or whether the wood was rotten, it having been used in the hold of the vessel to keep the cargo out of the water, and which could have been seen upon proper examination.
The defendants have not, therefore, shown such a state of facts as relieved them from the presumption of negligence arising from the breaking of one of the implements used by them in working the ship.
*667 The next question is, did the plaintiff show that she was free from contributory negligence ?
There was nothing to indicate any danger in being upon the deck during this time. No warning of danger was given, and the plaintiff could not be presumed to know that there was danger that this hawser would sweep the decks. If such danger existed, it was the duty of the officers of the ship to have warned the plaintiff, and to have kept the passengers out of the reach of danger. They were allowed to be on the deck—there was nothing to indicate danger to them, and the only warning was to stand away from that line, which conveyed no warning that they were in danger if they were clear of the line.
The plaintiff therefore seems to have shown that she was not guilty of contributing negligence.
The exception to the exclusion of the question as to the relative safety in being in certain parts of the vessel, whether she is at sea or not, was not well taken.
The passengers had been accustomed to be on this part of the vessel during the voyage, and if it was dangerous or improper to be in this part of the vessel while she was being warped into her dock, they should have been excluded from that part of the ship and warned of their danger, which was not done.
The evidence of the subsequent use of the capstan bar as a toggle was entirely competent, in view of the evidence showing that dunnage wood was used as a toggle, and was proper to be so used. The plaintiff had a right to show that there was other and better material within reach, which could have been used and was used.
The claim that the capstan bars were employed to work the capstan, and therefore could not be used as toggles does not seem in any way to aid the defendants’ position, because it is conceded that these bars were not in use, as the capstan was being worked by steam, and the bars were only used when steam was not employed.
There were no errors prejudicial to the defendants in the charge upon the question of damages.
The learned court charged the jury that if they found a verdict for the plaintiff, to award her such sum as in their judgment would compensate her for the pain and suffering' which she undoubtedly underwent and for the inconvenience which she does suffer and must hereafter suffer.
These were the sole elements which the court submitted to the consideration of the jury on the question of damages.
The jury, therefore, could not, unless they disregarded the charge of the court, make any compensation for loss of time, impaired capacity to earn money, cost of cure or pecuniary expenses. No such elements of damages were *668 submitted for their consideration, and no evidence was-given tending to show that any claim for compensation upon these grounds was made upon the trial.
The court having charged the jury what they must con: sider in determining the question of compensation, was not bound to charge that they must not consider other things as to which there is no evidence that any claim was made.
In fact the? charge seems to have been less favorable to the pláintiff than she had a right to demand, as by it elements of damage were excluded which she had the right upon the evidence to have the jury consider.
The court has undoubted power to set aside a verdict where the damages are excessive, and should never hesitate to exercise the same in a proper case; but in the case at bar we do not see any reason for interfering with the verdict upon this ground.
The amount of pain and suffering which the plaintiff endured as the result of this accident, was very great—some of her sufferings being described as “horrible”—and she seems to have been permanently injured and unable to pursue her ordinary avocation, and for the rest of her life subject to suffering and pain, arising from the injuries sustained at this time. Under these circumstances we cannot say that the verdict was excessive.
• The judgment and order appealed from should be affirmed, with costs.
Potter and Lawrence, JJ., concur.